a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

KENTRELL JAMES #549213,                     CIVIL DOCKET NO. 1:23-CV-00724
Plaintiff                                                                      SEC P

VERSUS                                                                    JUDGE DRELL

BRENT THOMPSON ET AL,             MAGISTRATE JUDGE PEREZ-MONTES
Defendants

---

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (ECF No. 38) filed by Defendants Brent Thompson, Dr. Spencer Launey, and Nurse Practitioner Heather Cormier ("Defendants"). Defendants seek dismissal of the civil rights Complaint (42 U.S.C. § 1983) filed by pro se Plaintiff Kentrell James ("James").

Because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law, the Motion for Summary Judgment should be GRANTED.

## I.     Background

In April and May of 2022, James was incarcerated at Raymond Laborde Correctional Center ("RLCC"). On April 25, 2022, at 9:01 a.m., James presented to the RLCC infirmary with shortness of breath, which he had been experiencing for three for four days. This was the first time James presented to the infirmary with this complaint. ECF No. 38-4 at 3; 38-7; 38-10 at 10.

1

Nurse Practitioner Cormier was notified of James's complaints, and she ordered a chest x-ray at 9:40 a.m. *Id.* At 9:58:58 a.m., the chest x-ray results indicated a large left lung pneumothorax (collapsed lung). *Id.* At 10:05 a.m., an IV was started, and an ambulance was called at 10:10 a.m. ECF No. 38-4 at 5; 38-7. The ambulance arrived at 10:25 a.m., and left the infirmary with James at 10:32 a.m. *Id.*

James arrived at the Rapides Regional Emergency Room in stable condition. James was released after treatment, but returned with a re-occurrence of the pneumothorax. ECF No. 38-1 at 1; 38-10 at 5. The treating physician at the emergency room, Dr. Matthew Linger, testified that the re-occurrence of the pneumothorax was not due to anything that RLCC medical care providers did or failed to do. *Id.* Rather, Dr. Linger attributed the lung condition to "Bleb Disease," which creates air pockets in the lungs that burst and cause the lung to leak air into the chest cavity, causing the lung to collapse. *Id.* Dr. Linger indicated that the condition was generally a congenital problem when presented in individuals around James's age. *Id.*

On April 29, 2022, James underwent a successful operation to remove the top portion of his left lung. *Id.* He was discharged from Rapides Regional back to RLCC on May 3, 2022, with a request from Dr. Linger that James remain in the RLCC infirmary until after his follow-up appointment. *Id.* Defendants complied with the doctor's request. *Id.*; ECF No. 38-4 at 78.

On May 25, 2022, James reported to the RLCC infirmary at 6:20 a.m. with complaints of nausea and vomiting, as well as dizziness and fatigue. ECF No. 38-1

2

at 2; 38-7 at 1.  Nurse Cormier ordered Phenergan and a saline IV at 6:45 a.m.  *Id.*  Nurse Cormier ordered a second IV and continued to monitor James.  *Id.* at 2.  His neurological exam was normal, and his temperature was 100.7.  *Id.*  James was discharged the following day because he was no longer vomiting and had consumed some crackers.  *Id.*

Less than two hours from discharge, James was readmitted to the infirmary with complaints of a headache.  *Id.*; 38-5 at 16.  The nurse noted lethargic speech, and James had to be assisted to the toilet.  *Id.*  James complained of not being able to control his body movement.  *Id.*  Dr. Launey was notified, and James was admitted for observation and tests.  *Id.*

On the morning of May 27, 2025, James's neurological exam was normal, and he was oriented to time and place.  *Id.*; 38-5 at 19.  However, at 3:15 p.m., James was disoriented, complained of a headache, and had significant coordination and balance deficits.  *Id.*; 38-5 at 23-24.  At 4:07 pm., James was transported to the emergency room.  *Id.*

James was diagnosed with a "possible neoplastic (abnormal growth of cells) process of the cerebellum with edema on both sides of the fourth ventricle and mild hydrocephalus."  ECF No. 38-1 at 3; 38-6 at 2.  A neurological consultation was arranged, and James was admitted to the intensive care unit.  *Id.*

A CT scan revealed a "moderate acute infarct (stroke) of the cerebellum with mild hydrocephalus."  *Id.*  James received Decadron for brain swelling and Dilantin for seizure prophylaxis.  *Id.*  James was ultimately transferred to the regular floor of

the hospital without surgical intervention.   He remained stable until he was discharged to a rehabilitation facility on June 1, 2022.  *Id.*  From the rehabilitation facility, James was transferred to Angola State Penitentiary because of its on-campus hospital.  ECF No. 38-1 at 3.

James sued Defendants for the denial of constitutionally adequate medical care, and Defendants move for summary judgment.

## II.   Law and Analysis

### A.   Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *See Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . .).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the

4

evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.,* 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and citation omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (internal quotation marks and citation omitted).

## B.   There is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

James claims that Defendants deprived him of constitutionally adequate medical care. To establish an Eighth Amendment violation regarding medical care, a plaintiff must demonstrate that defendants acted with deliberate indifference to his serious medical needs. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976)). Deliberate indifference is an extremely high standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal citation and quotation marks omitted). It requires that a plaintiff show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Damond v. City of Rayville*, 127 F.4th 935, 940 (5th Cir. 2025) (citing *Gobert*, 463 F.3d at 346); *see also Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

5

"[A]n inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs." *Mickens v. Stalder*, 2008 WL 544240, at *2 (W.D. La. 2008) (citing *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997)). And a plaintiff alleging a delay in medical care must show that the delay was caused by deliberate indifference and resulted in substantial harm. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

James's failure to respond to the summary judgment motion renders the Defendants' facts undisputed. *See Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)). According to those undisputed facts and the summary judgment evidence, James received prompt medical care when he presented symptoms to Defendants. James has come forward with no contradictory evidence that prison officials ever refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *See Gobert,* 463 F.3d at 346. Accordingly, Defendants are entitled to judgment as a matter of law.

Additionally, James does not dispute the summary judgment evidence that his transfer to the Louisiana State Penitentiary was prompted by its medical facility. Accordingly, to the extent he claims his transfer was retaliatory, the claim is conclusory, unsupported, and contradicted by the undisputed facts.

6

### III.    Conclusion

Because there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law, IT IS RECOMMENDED that the Motion for Summary Judgment (ECF No. 38) be GRANTED and this civil action be DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).   A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.   A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Monday, February 23, 2026.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

7